Marvine **MARKHAM**

v.

**CITY OF NEWPORT NEWS, VA.,**
**a municipal corporation, et al.**

**Civ. A. No. 684.**

United States District Court
E. D. Virginia,
Newport News Division.

June 7, 1960.

port News, Virginia, seeking to recover damages for injuries alleged to have been sustained as the result of negligence on the part of the city in the maintenance of a street. The plaintiff contends that this court has jurisdiction under the provisions of Title 28, § 1332 (commonly known as the Diversity Statute).

The city has filed a motion to dismiss the complaint for lack of jurisdiction of the Federal Court because of the provisions of Section 8–42.1, Code of Virginia, 1958 Supplement.

In 1958 the General Assembly of Virginia enacted a statute (Chapter 520), entitled:

> "An Act to amend the Code of Virginia by inserting in Chapter 34 of Title 8 a section numbered 8–757.1, relating to courts in which claims, suits or proceedings may be asserted, instituted, or maintained against counties, cities, towns, districts, boards, commissions, officers, agencies and other political subdivisions of the Commonwealth and of counties, cities and towns."

Because of an emergency clause the statute became effective from its passage on March 29, 1958. That was before the occurrences here involved.

Chapter 34, Title 8, of the Code of Virginia is entitled "Recovery of Claims against the State". However, nowhere in that chapter is found authorization to sue the state or any of its political subdivisions for damages resulting from the tortious act of an agent. The chapter prescribes only which suits may, and how they may, be brought against the state. Eriksen v. Anderson, 195 Va. 655, 79 S.E. 2d 597.

The pertinent language of the 1958 act (c. 520) is:

> "No claim, suit or proceeding for damages based on a tort shall be asserted, instituted or maintained against any county, city, town, district, board, commission, officer acting in his official capacity pursuant to the Constitution and laws of the Commonwealth, agency or other po-

Sacks & Sacks, Norfolk, Va. (Harold M. Stern, Norfolk, Va., of counsel), for plaintiff.

Harry L. Nachman, City Atty., Newport News, Va., for City of Newport News.

STERLING HUTCHESON, District Judge.

This is an action brought by a resident of California against the City of New-

litical subdivision of the Commonwealth or of any county, city or town except in a court of the Commonwealth established under or pursuant to the Constitution of Virginia and having jurisdiction and venue of such claim, suit or proceeding. The provisions of this section shall not apply to any such claims, suits or proceedings now pending in any other court, nor shall the provisions of this section apply to any cause of action arising prior to the effective date of this act."

■ In some unexplained manner this section was incorporated into the permanent volume of the Code of Virginia, not as a part of Chapter 34, Title 8 as specifically provided by the Legislature, but as a part of Chapter 3, Title 8, of the Code. Chapter 3 of the Code is entitled simply "Venue". Instead of being carried in the permanent volume as Section 8–757.1 in Chapter 34 of Title 8, the statute appears in the Code as Section 8–42.1 of Chapter 3. Whether this is attributable to a clerical error or to an interpretation of the editors is not material. What is material is, first, the intention of the Legislature and, second, whether the statute is or is not in violation of any provisions of the federal Constitution.

The intention of the Legislature to limit jurisdiction is too clearly shown by the language of the statute to require elaboration. Patterson v. The Bark Eudora, 190 U.S. 169, 23 S.Ct. 821, 47 L.Ed. 1002; United States v. Fisher, 2 Cranch 358, 2 L.Ed. 304; McGhee v. General Finance Corp., D.C.W.D.Va., 84 F.Supp. 24.

■ From the foregoing recital it is seen that the issue here concerns the right of a state to limit or prescribe the conditions upon which it, as a sovereign, or its political or municipal subdivisions, may be held answerable for a tort.

If the statute involves only venue, it follows that the federal court has jurisdiction and the motion of the City should be overruled. Upon the other hand, if the jurisdiction or right to sue is limited by the statute, the motion should be sustained.

■■ The liability or non-liability of a municipal corporation is purely a matter local in nature. City of Detroit v. Osborne, 135 U.S. 492, 10 S.Ct. 1012, 34 L.Ed. 260. A suit against a municipal corporation is a local cause of action which may be tried only where the municipality is situated, regardless of the theory underlying the cause of action; that is, whether it be tort or contract. O'Toole v. United States, D.C.Del., 106 F.Supp. 804, 809; Parks Co. v. City of Decatur, 6 Cir., 138 F. 550. In such cases venue may be jurisdictional. Thus, it is the law in Virginia that where the sole forum for a suit against the Highway Commission is prescribed by statute, Davis v. Marr, 200 Va. 479, 106 S.E.2d 722, or where an action of ejectment may be brought, Stowers v. Harman, 128 Va. 229, 104 S.E. 703, the suit must be brought in the court specified in each instance by the appropriate statute. No other court has jurisdiction to hear the case. See also Burks Pleading and Practice, Section 37, at page 55 (4th Edition, Boyd and Koontz). It seems clear that an action against a municipality must, as a matter of jurisdiction, be brought in the court where the municipality is located because it is a local cause of action regardless of the underlying theory of the liability.

The issue presented seems to have been definitely settled by City of Detroit v. Osborne, supra.

In that case the plaintiff brought suit against the City of Detroit for personal injuries received in consequence of a defect in a sidewalk. In stating the issue on appeal Mr. Justice Brewer said:

"The city alleges error; and its principal contention is that, under the rulings of the supreme court of Michigan municipal corporations are not liable in damages for personal injuries of this nature, and that, such being the settled law of the state, it is binding upon the federal courts. This contention suggests

two inquiries: First, What is the settled law of Michigan? and, second, if it be as claimed, is it binding upon the federal courts? The answer to the first inquiry is easy and clear. The precise question was presented in 1870 to the supreme court of Michigan, in the case of [City of] Detroit v. Blackeby, 21 Mich. 84."

After discussing decisions of the courts of Michigan, Justice Brewer continued:

"In answer to the first inquiry, it must therefore be affirmed that the law of Michigan is against any liability on the part of the city for injuries like those in this action."

Continuing the Court said:

"The second inquiry must be answered in the affirmative. If it is a matter of local law, that law is obligatory upon the federal courts."

After pointing out that the holding is not in harmony with the general rule nor in accord with views previously expressed by the Supreme Court, the opinion continues:

"But, even if it were a fact that the universal voice of the other authorities was against the doctrine announced by the supreme court of Michigan, the fact remains that the decision of that court, undisturbed by legislative action, is the law of that state. Whatever our views may be as to the reasoning or conclusion of that court is immaterial. It does not change the fact that its decision is the law of the state of Michigan, binding upon all its courts and all its citizens, and all others who may come within the limits of the state. The question presented by it is not one of general commercial law. It is purely local in its significance and extent. It involves simply a consideration of the powers and liabilities granted and imposed by legislative action upon cities within the state. While this court has been strenuous to uphold the supremacy of federal law, and the interpretation placed upon it by the

federal courts, it has been equally strenuous to uphold the decisions by state courts of questions of purely local law. There should be, in all matters of a local nature, but one law within the state, and that law is not what this court might determine, but what the supreme court of the state has determined. A citizen of another state going into Michigan may be entitled under the federal constitution to all the privileges and immunities of citizens of that state; but, under that constitution, he can claim no more. He walks the streets and highways in that state entitled to the same rights and protection, but none other, than those accorded by its laws to its own citizens.

"This question is not a new one in this court." Citing Claiborne County v. Brooks, 111 U.S. 400, 410, 4 S.Ct. 489, 28 L.Ed. 470. See also Burgess v. Seligman, 107 U.S. 20, 2 S.Ct. 10, 27 L.Ed. 359.

Quoting Claiborne County v. Brooks, the Court said:

" 'It is undoubtedly a question of local policy with each state what shall be the extent and character of the powers which its various political and municipal organizations shall possess, and the settled decisions of its highest courts on this subject will be regarded as authoritative by the courts of the United States; for it is a question that relates to the internal constitution of the body politic of the state.' "

In Detroit the local policy of the State had been declared by the courts of the State. In the case at bar the local policy of the State has been declared by the Legislature. Considering the respective functions of the two branches of the government involved it would seem that such a declaration by the Legislative branch might be considered as the more authoritative in declaring local policy.

This clear statement of the rule of law applicable and the reason for the rule, should be sufficient to foreclose any further discussion of the subject. How-

ever, Detroit was decided in 1889 and the importance of the principle is such that some dictum in Popp v. Archbell, 4 Cir., 203 F.2d 287; D.C., 108 F.Supp. 571, makes it advisable that the statute be considered in the light of later decisions of the Supreme Court.

In Popp v. Archbell the District Court had before it a construction of a Virginia Statute (Code 1950, § 8–220) providing that [203 F.2d 288]:

"* * *. [A]fter a non-suit no new proceeding on the same cause of action shall be had in any court other than that in which the non-suit was taken. * * *."

The District Court relying upon Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, and Woods v. Interstate Realty Co., 337 U.S. 535, 69 S.Ct. 1235, 93 L.Ed. 1524, held that the statute involved substantial rights which precluded the plaintiff from maintaining his suit in the federal court based solely upon jurisdiction after taking a non-suit in the state court.

The Court of Appeals for the Fourth Circuit reversed the District Court, stating that:

"* * * it is perfectly clear that the statute was intended to regulate procedure and practice in the courts of the state * * * and was not intended to limit, as indeed it could not limit, the jurisdiction of courts of the United States."

The Court then proceeded to use the following language:

"We look to state law to determine the substantive rights of the parties, (citing Erie); but, where under state law there is a cause of action of which any state court would have jurisdiction, there is jurisdiction in the appropriate federal district court to entertain it if the requisites of federal jurisdiction are present."

But, after stating that principle the Court then said:

"A statute limiting the right to entertain the suit in the court in which nonsuit was taken no more ousts the jurisdiction of the federal court than does a statute limiting the right to entertain a suit against a municipal corporation to a designated court of the county in which the corporation is situate."

While this language seems applicable to the case at bar, it must be recalled that it is no more than dictum, with no supporting authority cited. This case involves an entirely different principle. There the statute undertook no more than "to regulate procedure and practice in the courts of the state". This was pointed out by the Fourth Circuit. In the case at bar the statute expressly limits jurisdiction by denying the right to sue a city unless the suit is brought in a specific forum. The forum in which the suit may be brought is "a court of the Commonwealth established under or pursuant to the Constitution of Virginia and having jurisdiction and venue". In Popp the Court recognized that Woods v. Interstate Realty Co., supra and Angel v. Bullington, infra, "held that causes of action made unenforceable in state courts by the law of the state could not be enforced in federal courts".

Until Erie R. Co. v. Tompkins, supra, it seems to have been rather generally held that a state statute specifying a particular forum as the exclusive one in which suits against a political subdivision might be brought would not be controlling on a federal court in which such suit was brought when federal jurisdiction was founded solely on the Diversity Statute. Cowles v. Mercer County, 7 Wall. 118, 74 U.S. 118, 19 L.Ed. 86; Lincoln County v. Luning, 133 U.S. 529, 10 S.Ct. 363, 33 L.Ed. 766; Chicot County v. Sherwood, 148 U.S. 529, 13 S.Ct. 695, 37 L.Ed. 546. The Federal Courts did not consider themselves bound by state statutes which attempted to limit certain probate proceedings to a specific county court. Payne v. Hook, 7 Wall. 425, 74 U.S. 425, 19 L.Ed. 260. The Federal Courts did not hold themselves bound by state statutes which made un-

enforceable an action for debt against a decedent's estate where the estate had been represented to be insolvent. Suydam v. Broadnax, 14 Pet. 67, 39 U.S. 67, 10 L.Ed. 357; The Union Bank of Tennessee v. Jolly's Adm'r, 18 How. 503, 59 U.S. 503, 15 L.Ed. 472. The Supreme Court had also held that a state statute rendering unenforceable, by certain plaintiffs, otherwise valid contracts, because of the plaintiff's non-compliance with state law, is of no effect when the non-resident brings his contract action in the federal court. David Lupton's Sons Co. v. Automobile Club of America, 225 U.S. 489, 32 S.Ct. 711, 56 L.Ed. 1177. This entire line of authorities is, in large measure, based upon the early case of Suydam v. Broadnax, supra. These are the cases upon which the plaintiff here relies.

However, since Erie R. Co. v. Tompkins, supra, these cases are no longer the law. The Rules of Decision Act, 28 U.S.C.A. § 1652, has been given a more realistic meaning. Since that landmark decision the principle has been clearly established that when entertaining a suit based upon the court's diversity jurisdiction, in which a state cause of action is in issue, the federal court must follow the state rule respecting burden of proof. Cities Service Co. v. Dunlap, 308 U.S. 208, 60 S.Ct. 201, 84 L.Ed. 196; statutes of limitation, Guaranty Trust Co. of New York v. York, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079; state law and policy precluding recovery of deficiency judgments arising out of the sale of land, Angel v. Bullington, 330 U.S. 183, 67 S.Ct. 657, 91 L.Ed. 832; state statute defining the "commencement" of a lawsuit so as to toll the state statute of limitations, Ragan v. Merchants Transfer Co., 337 U.S. 530, 69 S.Ct. 1233, 93 L.Ed. 1520; and state statutes precluding judicial enforcement of a contract for the benefit of a non-resident, non-qualified corporation, Woods v. Interstate Realty Co., 337 U.S. 535, 69 S.Ct. 1235, 93 L.Ed. 1524 (overruling Lupton's Sons, supra). A federal court is bound to follow a state statute which imposes a requirement that a plaintiff post bond before bringing a stockholder's derivative action, Cohen v. Beneficial Loan Corp., 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528; state's choice of law rule in conflict of laws problems, Klaxon v. Stentor, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477; as well as the law of the state forum on conclusiveness of an arbitration clause, Bernhardt v. Polygraphic Co., 350 U.S. 198, 76 S.Ct. 273, 100 L.Ed. 199.

There are some cases involving state laws that cannot or need not be followed by the federal courts when dealing with diversity jurisdiction cases. In First National Bank of Chicago v. United Air Lines, 342 U.S. 396, 72 S.Ct. 421, 96 L.Ed. 441, a state statute which would have precluded a suit for wrongful death which had occurred in another state was held unconstitutional as in violation of the full faith and credit clause. It has been held that notwithstanding state law to the contrary, the relationship between the judge and jury in the federal courts is not subject to state law as to which problems are for determination by the Judge and which constitute jury questions. Byrd v. Blue Ridge Rural Elec. Co-op., 356 U.S. 525, 78 S.Ct. 893, 2 L.Ed.2d 953; Magenau v. Aetna Freight Lines, 360 U.S. 273, 79 S.Ct. 1184, 3 L.Ed.2d 1224. So far as the case at bar is concerned it is immaterial whether these cases represent a retreat from the decisions following Erie, cf. Walker v. United States Gypsum, 4 Cir., 270 F.2d 857, 860. Those cases are clearly distinguishable as to facts, law and reason and principle.

It is too well settled to be debatable that the State of Virginia by appropriate legislation could withdraw the right to sue the City for a tort action. City of Detroit v. Osborne, supra; Kowalewski v. City of Hastings, D.C. Minn., 112 F.Supp. 825; City of Portsmouth v. Weiss, 145 Va. 94, 133 S.E. 781; City of South Norfolk v. Dail, 187 Va. 495, 47 S.E.2d 405; Daniel v. City of Richmond, 199 Va. 490, 100 S.E.2d

763; McQuillin, Municipal Corporations, Section 54.07 3d. Ed.1950. Since the state has the power to abolish all tort liability on the part of the city, it seems clear that the state may limit such liability in any manner so long as it does not result in class legislation. The statute here considered applies equally to residents and non-residents of the State of Virginia.

Angel v. Bullington, supra, was an action brought by a citizen of Virginia against a citizen of North Carolina, seeking a deficiency judgment on a purchase money note secured by deed of trust on land in Virginia. A North Carolina statute (Code 1939, § 2593(f)) prohibited the right of the holder of such note to obtain a deficiency judgment. After receiving an adverse decision in the state court the plaintiff filed an action on the same claim in the federal court on the ground of diversity of citizenship. The Supreme Court, speaking through Mr. Justice Frankfurter, said [330 U.S. 183, 67 S.Ct. 662]:

"What is more important, diversity jurisdiction must follow State law and policy. A federal court in North Carolina, when invoked on grounds of diversity of citizenship, cannot give that which North Carolina has withheld. Availability of diversity jurisdiction which was put into the Constitution so as to prevent discrimination against outsiders is not to effect discrimination against the great body of local citizens.

"Cases like [David] Lupton's Sons Co. v. Automobile Club, 225 U.S. 489 [32 S.Ct. 711, 56 L.Ed. 1177], are obsolete insofar as they are based on a view of diversity jurisdiction which came to an end with Erie Railroad [Co.] v. Tompkins, 304 U. S. 64 [58 S.Ct. 817, 82 L.Ed. 1188]. That decision drastically limited the power of federal district courts to entertain suits in diversity cases that could not be brought in the respective State courts or were barred by defenses controlling in the State courts. Compare Suydam v. Broadnax, 14 Pet. 67, 75 [39 U.S. 67, 10 L.Ed. 357]. Of course, where resort is had to a federal court not on grounds of diversity of citizenship but because a federal right is claimed, the limitations upon the courts of a State do not control a federal court sitting in the State. Holmberg v. Armbrecht, 327 U.S. 392 [66 S.Ct. 582, 90 L.Ed. 743]."

Angel v. Bullington appears clearly in point, although the situation here presented is stronger for the defendant. In that case the right to recover a deficiency judgment against an individual on a purchase money contract is undoubtedly founded upon the common law. North Carolina annulled that right by a statute equally applicable to residents and non-residents of the state. In the case at bar the right to sue the City of Newport News, not an individual, but a political subdivision of the state, is based upon common law. The State of Virginia has limited the right of residents and non-residents of that state to sue its municipal corporation in any court except " * * * a court of the Commonwealth established under or pursuant to the Constitution of Virginia and having jurisdiction and venue of such claim, suit or proceeding."

There is no federal question involved. The language of the statute makes its meaning clear. The answer to the question presented seems equally obvious. The state has exercised its right to prescribe the conditions upon which the city may be sued. The statute is applicable to all persons who walk "the streets and highways in that state entitled to the same rights and protection as, but none other than, those accorded by its laws to its own citizens". It is clear that the principle recognized in City of Detroit v. Osborne is the rule applicable today.

It follows that the motion to dismiss should be granted and it will be so ordered.