**HARRISON CONSTRUCTION COMPANY, Appellant,**

v.

**OHIO TURNPIKE COMMISSION,**
Appellee.

No. 13779.

United States Court of Appeals
Sixth Circuit.

Dec. 3, 1959.

John H. Leddy, Columbus, Ohio, Lawrence D. Stanley, John H. Leddy of Porter, Stanley, Treffinger & Platt, Columbus, Ohio, William Wallace Booth, and John D. McIntyre of Reed, Smith, Shaw & McClay, Pittsburgh, Pa., Sheldon S. Reynolds of Arter, Hadden Wykoff & Van Duzer, Cleveland, Ohio, on brief, for appellant.

John Lansdale, Jr., Cleveland, Ohio, Lockwood Thompson, General Counsel, Ohio Turnpike Commission, Strongville, Ohio, John Lansdale, Jr., and John E. Kirkpatrick of Squire, Sanders & Dempsey, Cleveland, Ohio, on brief, for appellee.

Arnold F. Bunge of Marshall, Melhorn, Bloch & Belt, Toledo, Ohio, Jamille G. Jamra of Eastman, Stichter & Smith, Toledo, Ohio, on brief amici curiæ for Johnson-Greene Co.

Wm. E. Knepper of Knepper, White, Richards, Miller & Roberts, Columbus, Ohio, Ross W. Shumaker of Shumaker, Loop & Kendrick, Toledo, Ohio, on brief amici curiæ for S. J. Groves & Sons Co.

Before McALLISTER, Chief Judge, and MILLER and CECIL, Circuit Judges.

CECIL, Circuit Judge.

Harrison Construction Company, Appellant, filed its complaint in the District Court for the Northern District of Ohio, to recover damages from Ohio Turnpike Commission, Appellee, alleged to have been caused by breach of contract on the part of the Commission. A motion to dismiss was sustained by order of the District Court. Appellant seeks a reversal of that order.

The sole question presented here is whether or not the action is in reality a suit against the State of Ohio and thus barred by the eleventh amendment to the Constitution of the United States.

The amendment reads: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State or by Citizens or Subjects of any Foreign State."

The statutory provisions creating and governing the Ohio Turnpike Commission are embraced within sections 5537.01–5537.99, Ohio Revised Code. Pertinent characteristics are as follows:

"There is hereby created a commission to be known as the 'Ohio turnpike commission'. Such commission is a body both corporate and politic in this state, and the exercise by it of the powers conferred by section 5537.01 to 5537.23 inclusive, of the Revised Code, in the construction, operation, and maintenance of turnpike projects shall be held to be essential governmental functions of the state, but the commission shall not be immune from liability by reason thereof." Sec. 5537.02, O.R.C.

The director of highways is an ex-officio member of the commission without compensation but no action may be taken by it without the affirmative vote of three of the four regular members of the commission. The director of highways may make a study of a turnpike project and may use his engineering and other forces including consulting and traffic engineers for the purpose, but the expenses of such study shall be a part of the cost of the project with reimbursement to be made from the proceeds of bonds sold by the commission.

The salary of the commissioners and all expenses incurred by them in constructing and operating any project shall be paid from the proceeds of the bonds provided for in the Act and the operating revenues of the project. The commission shall not incur any liability or obligation beyond the extent of these funds, nor can it incur any indebtedness or liability on behalf of or payable by the state or any political subdivision thereof.

The commission is empowered to construct, maintain and operate turnpike

projects at such locations as are approved by the governor and in accordance with standards approved by the director of highways for the benefit of the people of the state and for the purpose of improving traffic conditions in the state, promote the agricultural and industrial development of the state and to provide for the general welfare. Whenever all of the bonds and the interest thereon of any turnpike project have been paid and the project is in good repair, it shall become part of the state highway system and be maintained free of tolls.

Among the powers granted to the commission it may adopt an official seal which shall not be the seal of Ohio; sue and be sued in its own name provided that any suits against it shall be in the common pleas courts of the state, plead and be impleaded; issue revenue bonds; fix, revise, charge and collect tolls; acquire, hold and dispose of real and personal property; acquire in the name of the state by purchase or condemnation such public or private lands, including public parks, playgrounds or reservations or parts thereof or rights therein, etc., as it deems necessary for its purpose. (Full compensation shall be paid for public lands, playgrounds, parks, parkways, or reservations so taken) ; make and enter into all contracts and agreements necessary or incidental to its purpose; employ consulting engineers, superintendents, managers, and such other engineers, construction and accounting experts, attorneys and other employees and agents as in their judgment are necessary and fix their compensation; provide unemployment insurance and workmen's compensation coverage for its employees.

Title to property taken by condemnation shall be vested in the state. The commission must compensate the state adequately for the use of all state lands.

The Commission is authorized to issue revenue bonds in its name to finance a turnpike project but the principal and interest on such bonds are to be paid solely from the revenue received from the operation thereof. Bonds may be issued without obtaining the consent of any department, division, commission, board, bureau, or agency of the state. The issuance of the bonds need not comply with any other law of the state applicable to the issuance of bonds and they do not constitute a debt or a pledge of the faith and credit of the state.

The commission is not required to pay taxes on any turnpike project or any property acquired in the performance of its duty. The income from the bonds and any profit made on their sale is free from taxation by the state.

It is apparent that the Legislature very carefully immunized the treasury of the state from any obligations whatever arising out of the creation of the turnpike commission or any projects which it might undertake.

■ The question as to whether or not the state is the real party in interest must be "determined by the essential nature and effect of the proceeding as it appears from the entire record." Copper S. S. Co. v. State of Michigan, 6 Cir., 194 F.2d 465, 466; In re Ayers, 123 U.S. 443, 8 S.Ct. 164, 31 L.Ed. 216; Pennoyer v. McConnaughly, 140 U.S. 1, 12, 11 S.Ct. 699, 35 L.Ed. 363; Ford Motor Co. v. Department of Treasury of State of Indiana, 323 U.S. 459, 65 S.Ct. 347, 89 L. Ed. 389.

■ It is claimed on behalf of appellee that the relationship between the state and various agencies of state is a question of state law. Decisions of the Ohio Supreme Court on the subject, if any there were, would be persuasive if not conclusive. At this time there are no Ohio cases which hold that a suit against the Ohio Turnpike Commission is a suit against the State of Ohio. State ex rel. Allen v. Ferguson, 155 Ohio St. 26, 97 N.E.2d 660; State ex rel. Ohio Turnpike Commission v. Allen, 158 Ohio St. 168, 107 N.E.2d 345; Carney v. Ohio Turnpike Commission, 167 Ohio St. 273, 147 N.E.2d 857; State ex rel. Kauer v. Defenbacher, 153 Ohio St. 268, 91 N.E. 2d 512, cited by appellee do not decide that question.

It has been decided specifically in some other states which have similar commissions that the commission is not synonymous with the state. People v. Illinois State Toll Highway Commission, 3 Ill.2d 218, 120 N.E.2d 35; Indiana State Toll Bridge Commission v. Minor, 236 Ind. 193, 139 N.E.2d 445; Hope Natural Gas Company v. West Virginia Turnpike Commission, W.Va., 105 S.E.2d 630.

In Pennsylvania and West Virginia where there are statutes similar to the Ohio statute it has been decided by the United States district courts that a suit against the commission is not a suit against the state. Hunkin-Conkey Construction Co. v. Pennsylvania Turnpike Commission, D.C.M.D.Pa., 34 F.Supp. 26; Darby v. L. G. De Felice & Son, Inc., D.C.E.D.Pa., 94 F.Supp. 535; Lowes v. Pennsylvania Turnpike Commission, D.C. M.D.Pa., 125 F.Supp. 681; Eastern Motor Express v. Espenshade, D.C.E.D. Pa., 138 F.Supp. 426; Linger v. Pennsylvania Turnpike Commission, D.C.W.D. Pa., 158 F.Supp. 900; Masse v. Pennsylvania Turnpike Commission, D.C.E.D. Pa., 163 F.Supp. 510; Guaranty Trust Company of New York v. West Virginia Turnpike Commission, D.C.S.D.W.Va., 109 F.Supp. 286. For an apparent conflicting decision of a district court, see Florida State Turnpike Authority v. Van Kirk, 146 F.Supp. 364.

■ This action will not and cannot in any way affect the Treasury of the State of Ohio. That is a test of whether or not a suit is against the state. In Ford Motor Co. v. Department of Treasury of State of Indiana, supra, at page 463 of 323 U.S., at page 350 of 65 S.Ct., the Court said, "The action is against the state's department of treasury," and at page 464 of 323 U.S., at page 350 of 65 S.Ct., "And when the action is in essence one for the recovery of money from the state, the state is the real, substantial party in interest and is entitled to invoke its sovereign immunity from suit even though individual officials are nominal defendants."

In Smith v. Reeves, 178 U.S. 436, 20 S.Ct. 919, 44 L.Ed. 1140, it was held that the suit was one against the State of California. At pages 438–439 of 178 U.S., at page 920 of 20 S.Ct. it was said, "Although the state, as such, is not made a party defendant, the suit is against one of its officers *as treasurer*; the relief sought is a judgment against that officer *in his official capacity;* and that judgment would compel him to pay out of the public funds in the treasury of the state a certain sum of money. Such a judgment would have the same effect as if it were rendered directly against the state for the amount specified in the complaint."

State Highway Commission of Wyoming v. Utah Construction Co., 278 U.S. 194, 49 S.Ct. 104, 73 L.Ed. 262, is cited as the leading case in support of appellee's contention. This case is readily distinguishable from the pending case. The highway fund was in the custody and keeping of the state treasurer and all roads constructed were financed from the state highway fund at the expense of the state. At page 199 of 278 U.S., at page 106 of 49 S.Ct., the Court said, "The state acting through the highway commission, as it might through any officer, became a party to the original agreement *and obligated herself thereby.* Neither the commission nor any of its members assumed any direct or personal responsibility. * * * *The commission was* but the arm or alter ego of the state *with no funds* or ability to respond in damages." (Emphasis added.) Applying the basic test of the Ford case above cited, it is apparent that the action was against the State of Wyoming.

It will serve no purpose to review all of the cases cited on behalf of appellee as sustaining its position. While some of them have some attributes in common with the case at bar, each of them can be distinguished on its facts. None of them involve turnpike commissions. Reference is made to Pennsylvania Turnpike Commission v. Welsh, 3 Cir., 188 F.2d 447. The Court refused to issue writs of prohibition and did not, therefore, decide the issue for the reason that

it could be reviewed on normal appeal after final order.

The nature of the commission as created by statute is pretty well summed up by the following sentence at pp. 11, 12 of appellant's brief. "This would not indicate that the State Legislature considers the Commission to be an inseparable 'other self', but rather that it considers it to be what, in fact, it really is—an autonomous entity vested with certain privileges and powers to accomplish a result which the State desires but in relation to which the State does not wish to utilize its governmental departments or to expose to risk its State treasury."

Since the State of Ohio is not specifically named as a party defendant and we conclude from the entire record of the case that the essential nature and effect of the proceeding does not constitute a suit against the State, the judgment of the District Court must be and is hereby reversed.

The case will be remanded to the District Court for further proceeding.